DAVID W. BARNES & another *vs.* TILLY HAYNES.

A passage way which extended from a street, along and upon both sides of the dividing
line between two lots, and was the only means of access to the back part of either, was
used uninterruptedly for twenty years by the owners of both lots, without limit, restric-
tion, interruption or objection, or any claim of right except what might be implied from
such use; and no mention of any right of way was made in any of the conveyances
of either lot for a much longer time. *Held*, that from such use a grant must be pre-
sumed, to the owner of each lot, of an easement in that part of the passage way which
was upon the other lot.

ACTION OF TORT, praying for relief in equity, for the obstruc-
tion of a passage way. The case, which was pending in the
county of Hampden, was referred, by agreement of parties, to
report the facts ; and the referee reported to this court a state-
ment of facts, the material part of which was as follows :

The plaintiffs and the defendant are owners of adjoining lots
of land fronting on the west side of Main Street in Springfield.
Upon the plaintiffs' lot stands a building, called the Coolidge
house ; and upon the defendant's a building, known as the
Lombard house, stood until 1857. These buildings had stood
upon the premises from a date earlier than the recollection of
any witness, and remained substantially unchanged from 1812
to 1857. The distance from the Coolidge house to the division
line between the two lots is about eight feet at the nearest point,
and the distance from the Lombard house to the same line was
from twelve to twenty feet. In and before 1812 the two lots
extended back to the Connecticut River, a distance of from
seventy to one hundred rods. There was no access to the rear
of either lot except by means of the space between the two
houses. In 1842 the opening of Pynchon Street from Main
Street to the river furnished the defendant with another entrance
to the rear of the Lombard lot.

The plaintiffs claim a right of way for the owners of their lot
in common with the owners of the Lombard lot, over a passage
way extending from Main Street along the division line between
the two lots, and about equally divided by it, for a distance of

about thirty six feet, to a post, to which were attached gates opening into each lot. The defendant admits the common use of this passage way, but denies the existence of any legal right of way over his land; and in 1857 he removed the old Lombard house, and erected a brick building, covering the entire width of his lot, disregarding this passage way, and began to dig the cellar and foundations before the date of this writ.

From a period prior to 1812, and beyond the memory of any witness, the owners and occupants of these two lots had made common use of the passage way in question, for all purposes connected with the two lots, and the families residing in each, (who were upon terms of intimacy and frequent familiar intercourse,) more extensively by the occupants of the defendant's lot than by those of the plaintiffs, but by both without limit, restriction or interruption, and without any accompanying claim of right, except such as may be implied from the use as described; and without any question or objection.

Until 1831 there was no gate on Main Street across the passage way, and no fence in front of the space between the two houses; the fences in front of the houses extending only to the corner of each. There was a division fence between the lots, commencing at the post at the rear end of the passage way. About the year 1833 the space between the two houses was inclosed from the street, and a gate placed across the end of the passage way, but by whom it did not appear; the gateway being nearly equally divided between the two lots. This gate generally stood open, and was removed in two or three years. In 1842 or 1843, after the opening of Pynchon street, Otis Lombard, the son of the then owner of the defendant's lot, again hung up the gate, without consultation with or objection from Coolidge, the then owner of the plaintiffs' lot; and kept in order the track which led from the street to the passage way, and filled up and graded the ground on the Lombard lot, within the inclosure, to the division line; and applied to Coolidge for permission to do the same upon his lot across the whole passage way, who replied that he had no objection to his levelling the ground, if he did not obstruct the passage way.

About the same time Coolidge, having offered his premises for sale, in some discussion with Otis Lombard about the matter, asserted that he had a right of way over the passage, as used, " because he had used it." No material change was made in the rear gateways or the passage way from 1812 to 1857.

The defendant relied upon the fact that the several conveyances of the two lots from 1760 to 1857 contain no mention of a right of way, either as part of the premises granted, or by way of exception from the warranty against incumbrances.

This case was argued at Boston in January 1859.

*R. A. Chapman,* for the plaintiffs, cited *Corning* v. *Gould,* 16 Wend. 534; *Putnam* v. *Bowker,* 11 Cush. 542; *Binney* v. *Proprietors of Common Lands in Hull,* 5 Pick. 503; *Kilburn* v. *Adams,* 7 Met. 33; *Kent* v. *Waite,* 10 Pick. 138; *Brown* v. *Thissell,* 6 Cush. 257; *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241; *Barker* v. *Salmon,* 2 Met. 32; *Williams* v. *Nelson,* 23 Pick. 141; *Melvin* v. *Whiting,* 10 Pick. 295; *Ashley* v. *Ashley,* 4 Gray, 197; *Hazard* v. *Robinson,* 3 Mason, 275; Rev. Sts. *c.* 60, §§ 27, 28; *c.* 119, § 14; *Bright* v. *Walker,* 1 Cr., M. & R. 219; *Tickle* v. *Brown,* 4 Ad. & El. 369; *Cowling* v. *Higginson,* 4 M. & W. 255; Gale & Whatley on Easements, *c.* 5, § 3.

*G. Ashmun & N. A. Leonard,* for the defendant. It is essential that the plaintiffs, in order to establish their claim of a right of way by prescription, should prove affirmatively a continued, uninterrupted and adverse use, for a period of twenty years, under a claim of right, with the acquiesence and knowledge of the owner. *Sargent* v. *Ballard,* 9 Pick. 251. *Hill* v. *Crosby,* 2 Pick. 466. *Arnold* v. *Stevens,* 24 Pick. 106. *Gayetty* v. *Bethune,* 14 Mass. 53. *Thomas* v. *Marshfield,* 13 Pick. 243. *Bachelder* v. *Wakefield,* 8 Cush. 250. *First Parish in Medford* v. *Pratt,* 4 Pick. 222.

That, previously to 1843, the use of this way by both parties was consistent with the theory of the defendant, that is, by mutual indulgence and without any express claim of right, appears from the following facts : (1.) The use was without any accompanying claim of right, except such as may be implied from the line as described, and without objection on the other

hand.   To constitute such a claim, the use must amount to an invasion or abridgment of the defendant's right.   *Arnold* v. *Stevens*, 24 Pick. 110.   *Kilburn* v. *Adams*, 7 Met. 39.   *Dawson* v. *Duke of Norfolk*, 1 Price, 246.   *Ewing* v. *Burnet*, 11 Pet. 52. Angell on Adv. Enjoyment, 78.   *Rogers* v. *Sawin*, 10 Gray,    . (2.) The continuance of the way was advantageous to the occupants of both lots; and when the continuance of the way ceased to be so advantageous, the owners of the Lombard estate closed it up by hanging the gate across it, and exercised a control on their side of the line, inconsistent with any acknowledged right of Coolidge, and without objection on his part.   (3.) Coolidge first made claim to the right of way, not by virtue of any grant or contract between the owners of the lots, but " because he had used it."   *Sargent* v. *Ballard*, 9 Pick. 251.

The way in question being upon both lots, and the use of it by the adjoining occupants being of the same character, the covenants contained in the deeds of the owners of the respective lots, that their lot is free from incumbrances, explain the nature of this use by both parties, and are of great weight. *Church* v. *Burghardt*, 8 Pick. 327.   1 Greenl. Ev. § 211.

SHAW, C. J.   This case comes before us, as upon an agreed statement of facts.   The parties, and those under whom they claim respectively, owned estates on the west side of the Main Street in Springfield; each had a dwelling house on the street, and extensive rear lands back of each, extending to Connecticut River, to which neither of them had access except from the Main Street.   There was in fact, and in actual use, a passage way, lying between the two houses, from the street to the rear, to a point where each party had a gate leading into his own rear premises, one on the one side, and the other on the other side of the dividing line, by which the fee in the soil of their respective estates was divided; and the track of the passage way, as actually used, lay partly on the one side, and partly on the other side of the same dividing line.   This way was used by both parties as a common passage, for all useful purposes, to the rear part of their respective houses, as also to their respective

open lands, held in severalty, and separated by a similar dividing line.  This common use continued, without interruption, until a few years since, when a new public street was opened from the street towards the river on the other side of the premises now of the defendant, by means of which the owners of that estate had a free access to the rear of their house, and to the former open land lying in rear of their house, towards the river.  Since that time the defendant has ceased to use the old common passage, and has claimed the right to use that part of his land, over which the track of the old way passed, as a way, and has claimed the right to use it, and has used it, for other purposes, and built upon it, so that the way in its old course can no longer be used by the plaintiffs.

Upon the facts reported, the court are of opinion that, under the circumstances stated, and taken in connection with the deeds under which the parties and their predecessors have respectively held their estates, the use of the common way, by each, so far as it was used in and over the soil of the other, was adverse, uninterrupted and used under a claim of right, and continued more than twenty years, (probably in fact a great many more than twenty,) and thereby each acquired such an easement in that portion of the land of the other, which was covered by the way, as the other could not lawfully disturb.

We think that the antiquity, the distance between and the relative position of their respective dwelling houses, and the open lands in the rear of each, and the obvious convenience and necessity for such a common right of way to their respective rear premises, strengthen the presumption arising from long, adverse and undisturbed use, of a non-appearing grant, by which such a common way was created, partly on the land of each, for their common benefit.  And we also think that when a fence was erected against the street, the erection of a gate adapted to the passage of teams and carriages, partly on the land of each of the parties, tends to confirm the same presumption.  When such actual, uninterrupted use of a way, as of right, is shown to have existed a sufficient length of time to create the presumption of a grant, if the other party relies on the fact that these

acts, all or some of them, are permissive, it is incumbent on such party, by sufficient proof, to rebut such presumption of a non-appearing grant; otherwise, the presumption stands as sufficient proof, and establishes the right.

*Judgment for the plaintiffs.*