## THOMAS McELHONE v. JAMES McMANES ET AL.

APPEAL FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

Argued January 26, 1888—Decided February 13, 1888.

After a parol and unrestricted dedication of an alley for the common benefit of lots in the front of it, followed by a continuous and notorious user for ordinary purposes for thirty years or more, a bill in equity by the owner of the soil to restrain a lot-owner from laying a drain-pipe therein in connection with a public sewer, will not be entertained.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 55 January Term 1888, Sup. Ct.; court below, No. 540 September Term 1886, C. P.

On October 18, 1886, a bill in equity was filed by Thomas McElhone against James McManes, owner, and George F.

Payne and Charles W. Wetter, trading as George F. Payne & Co., for an injunction to restrain the defendants from laying a drain-pipe in the soil of an alley, the title to which was claimed to be in the plaintiff.

The cause being put at issue by answers and replication, *Mr. James W. Latta* was appointed examiner, who, on June 10, 1887, made a report which in its findings of fact and of law was as follows:

The plaintiff is the owner of the premises at the southeast corner of Thirty-sixth and Haverford streets, and has the fee in the soil of the alley. He has owned them since the first day of June, 1882, and bought with a full knowledge of the existence of the alley, deriving his title through intermediate owners from William Peterson, who some thirty years ago dedicated the alley by laying out his lots and extending the yards of his houses to it. Nowhere in the paper title does this or any dedication appear. The right to the alley is solely a right by user.

For a long time the alley which does and always did extend from Haverford street to Rockland street, two public highways, was unpaved. Its boundaries were designated only by a fence on the western side from which the gates from the yards of the houses fronting on Thirty-sixth street opened into it. There was no fence on the eastern side and nothing to outwardly denote its separation from an open lot which lay there

until a time not definitely fixed, but certainly many years ago; then a fence was erected, which with the other already in existence, inclosed the alley lengthwise and subsequently the entire alley was paved. Its two ends are now and appear to have always remained open.

The alley was used as a passage-way, as one witness states, " as are all others for going in and out." Before the alley was paved ashes were thrown into it to make good walking, that banked the water into the yards, and trenches six or eight inches deep were dug from time to time in the alley for its outlet. Trenches and water-courses were frequently dug in it. They were temporary and needed to be cleaned every day or two. It nowhere appears that there was any restriction or limitation as to the use of the alley. Nor was there ever any dispute as to its use up to about the time of this procedure. It did not appear that there had ever been any other drain laid in it. One witness testifies as far as he knew it was used as a public way.

The plaintiff suffered no direct injury, nor did he derive any benefit from any connection with the drain itself. The defendants' witnesses testified that the drain was of a benefit to plaintiff for taking up the water from the surface and roof, and keeping the alley dry for the six months when it would be obstructed by slush and ice. The indirect injury that the plaintiff complained of was that the drain prevented his extending his cellar with a vault for the storage of coal; which, when so extended, would have permitted him to use the whole cellar for the wines and liquors essential to keep for the prosecution of his business. This vault he had intended building under the alley.

It did not appear by the testimony that there was a public sewer on Thirty-sixth street; as a fact there is none. If there were, there could be no question that each of the six houses built by the defendant should be separately and independently connected with it.

The question presented is not one of title to a right of way to be first settled at law, as was strenuously insisted upon by the defendants' counsel. The plaintiff, the owner of the servient tenement, concedes the right to the dominant owner, the defendant; nor does it depend so much upon a right with or

Master's Report.

without restriction or limitation, for if it be a right of private way only, whether by grant or user, it is essentially one and the same thing. If it came by user and was only a way in the beginning, so it must continue. If it had been by grant it would have doubtless been in the customary phrase " as and for a passage-way and water-course forever." Clearly, uninterrupted, continuous and exclusive use, notoriously for twenty years, essential for the conference of such right, must give at least an easement of the way. And it ought to be conceded that such an easement will not prevent the servient owner from building over the way; and if over, why not under, provided that by such building the right itself is in no wise interfered with?

This was, however, in no sense a " way of necessity," nor as a rule are the ways and alleys of a city in any sense usually such ways or passages as the books define and construe " private ways " to be. The public thoroughfare was essentially all that was needed for common ingress and egress to and from the houses. The other outlet was a need that grew from the surroundings, the necessities, the essentials, consequent upon the congregation of persons and property for convenience and enjoyment in health and comfort, of what they have brought together of their worldly goods and effects. Such aggregations require other opportunities for the reasonable enjoyment of what every man is entitled to fully, freely, and healthfully enjoy, than where the inhabitants are scattered and the settlements sparse.

Coming, therefore, as did this right by prescription, it must have comprehended in the fullest sense a right incident to all these consequent necessities and essentials. The right would vary as the needs varied. While the vicinity was more or less rural, the surface would answer all demands for reasonable comforts and healthful enjoyments. But as the population grew and the buildings increased, other necessities might demand, other essentials might require, a higher and more extended privilege. And if need be that the soil must be penetrated to remove what would otherwise offend a proper regard for wholesome cleanliness or endanger the public health, then the prescription intended that the servient owners must yield to such necessities.

It is clear that the former owner, Peterson, in laying out the alley, intended it to be a free and open way forever. "It needs no citation of authority," says STERRETT, J., "to show that such a right of way appended or annexed to an estate may be used and enjoyed by those who own or lawfully occupy the dominant tenement for any purpose to which it may from time to time be legitimately applied:" Gunson v. Healy, 100 Pa. 42.

Was this not then such a dedication as to bring the land dedicated within the incidents necessitated by a dense and crowded population? For a long time there was no fence on one side of it. Its ends were never closed. It connects two public highways. It was so far a public way as to be as well a passage for those who chose to use it to pass from Rockland to Haverford street, as it was for those whose properties abutted on it, their neighbors, friends and visitors. There was in fact no evidence of any intention on the part of the common owner who laid out the alley to retain any control of it whatever. Because of this, is there any additional servitude imposed upon it consequent upon the essentials imperatively demanded for the preservation of the health and safety of a larger and growing community?

If the owner of the soil open a passage-way and neither marks by any visible distinction that he means to preserve all his rights over it nor excludes persons from passing over it by positive prohibition, he shall be presumed to have dedicated it to the public. Although the passage in question was originally intended only for private convenience, the public are not now to be excluded from it after being allowed to use it so long without interruption: Per Lord ELLENBOROUGH, in Rex v. Lloyd, cited in Angell, Highways, 152.

It does not seem to be certain that there exists a right to occupy even the public highways with sewer, gas or water pipes, except that it be considered within the police power of the state to regulate and provide that they shall be so occupied by wholesome and reasonable laws for the health and safety of the community. In the country such uses, it has been held, were not within the original taking, and must be paid for: Angell, Highways, 94. If the police power of the state is broad enough to regulate the use of the highways for

the public benefit in the city, because it is a city; to do there with the roads what it cannot do in the country, because it is the country, why cannot the state in a city do that with a private way over which was a right of passage, and evidently more, which it is conceded it may do with the public streets and thoroughfares, the fee in the soil in both instances being somewhere else?  Such at least the legislature of Pennsylvania conceived it could do, and so, in fact, it did do, when by the act of June 30, 1885, P. L. 250, it authorized and directed the board of health of the city of Philadelphia to make and promulgate rules for the "construction of house drainage and cesspools," and also prescribed that upon their promulgation the offender guilty of a refusal or neglect to comply with them should be liable to punishment by a fine of not more than one hundred dollars, or an imprisonment not exceeding one year, or both, at the discretion of the court.  These rules, on February 23, 1886, were duly promulgated, and from thence have been and are part of the laws of the commonwealth. . . . . .

With a sewer accessible by an alley, with none on Thirty-sixth street, and the prohibition against cesspools, either the buildings must stop or the builder be involved in the violation of a penal statute.  To this it may be answered well enough, "you have made provision for the taking, but failed to provide for the compensation.  To be sure you may require that the drainage shall be properly and safely constructed, but where there is no other accessible outlet except through my alley, you have no right to permit the use of its soil except you pay me for it."  Whether or not, to suppress or abate a nuisance, (and if there be one nuisance more conspicuous and continuing than another, unsafe and improper drainage is that one,) the state in the exercise of its police power, can authorize entry without compensation, need not here be considered.

Is, indeed, such municipal action really a taking; does it in fact rise higher than a mere regulation?  In Baker v. The City of Boston, 12 Pick. 194, it was said: " The measure was a mere health law or regulation and every citizen holds his property subject to such regulations.  Police regulations to direct the use of private property so as to prevent its proving pernicious to the citizens at large are not void, although they in

some measure interfere with private rights without providing compensation. And if by such regulations an individual receive some damage it is considered as damnum absque injuria."

Nor indeed did any direct or present injury follow in this instance. Prospectively the plaintiff is deprived of a consummation of an intention to extend his cellar; probably not wholly, for doubtless means might be devised by which the extension could be made, notwithstanding the existence of the drain; otherwise, if the alley way be any use to him at all, he is really benefited. Liability to leakage is as likely from one source as the other. He is relieved from slush and ice that must accumulate from the waste and overflow of the hydrants and melting of snows from the roofs and yards, and the alley is at all seasons a free and open means of passage.

This law is a most salutary measure. It strikes at as safe and sure a preventive against disease, epidemic, and contagion as has yet been devised. Already but a short time in existence, its beneficial effects are apparent, not only in all new building operations but elsewhere, when it has been necessary to invoke its wholesome provisions. Odious and distasteful at first, as the good results of its working have become known, it has grown in the public favor. Applicable only to cities of the first class, others have asked the extension of its wise provisions for their benefit. Statutes of a like character have for some time been safely and satisfactorily operated in New York, San Francisco, Washington and Baltimore.

In this instance, with such an open, notorious and free dedication for all and every purpose for which an alley in a city might be used, no fundamental principle appears to have been disturbed, and the court should lend their sanction to a measure so essential to the preservation of the public health.

Your master therefore recommends that the bill be dismissed and submits a decree to that effect.

Exceptions filed to this report by the plaintiff in the bill, on argument on September 27, 1887, were dismissed by the court, BIDDLE, J., in the following opinion and decree:

This alley was evidently dedicated to the use of the adjoining houses as a water-course and passage-way and has been used as such for thirty years. Whether the water is carried

over the surface or under the surface we do not think material. There is no restriction requiring that the water should be made to flow over the surface of the passage-way. Used as the plaintiff requires, it would be of little use to the houses for whose benefit it was dedicated, and would probably be abated as a nuisance.

We do not think the act of 1885 can affect the rights of the parties in this proceeding.

The exceptions in this case are dismissed.

The plaintiff thereupon took this appeal, assigning that the court erred:

1. In dismissing the plaintiff's exceptions to the master's report and dismissing the bill.

2. In not making a decree that the defendants should take up the drain and replace the alley as it originally was.

3. In not making a decree as prayed in the plaintiff's bill.

*Mr. John H. Sloan*, for the appellant:

1. Even if it were in the power of the legislature, by an act of assembly, to take away the citizen's private property without process of law and without compensation, it is manifest that the act of June 30, 1885, P. L. 250, does not and was not intended for any such purpose. That act, as ruled by the court below, does not affect the question.

2. It is conceded that the right of the defendant is only by prescription. Can a right by prescription be stronger than a right acquired under a solemn deed? Even where a private way is reserved by deed, one claiming under the grantee has no right to use it for other purposes than those for which it was designed, to the injury of the grantor and those claiming under him: Kirkham v. Sharp, 1 Wh. 323; Lewis v. Carstairs, 6 Wh. 193; Jamison v. McCredy, 5 W. & S. 129; Lazaretto Road, 1 Ash. 417; Shroder v. Brenneman, 23 Pa. 348.

3. The argument from necessity is answered by the fact that the houses intended to be drained face upon a wide, public street, where a sewer could be placed better than in an alley; and it is no answer to say that the expense of the invasion of a private alley by the drain would be less than that of putting it down in a public street. The cases, Gunson v. Healy, 100

Pa. 42, and Rex v. Lloyd, cited in Angell on Highways, 152, do not conflict with the claim of the plaintiff; there was no question in either case as to the appropriation of the soil.

*Mr. Edward C. Quin*, for the appellees:

1. The single point raised by the plaintiff is, drain on the surface but not under. To say, if sanitary science discovers a new, better and healthier mode of drainage, it may not be adopted, is expressly to overrule Gunson v. Healy, 100 Pa. 42.

2. In the cases cited by the plaintiff (2), the use of the alley was expressly restricted by the words of the deed. The very point of this case is that there was no restriction.

3. The plaintiff's cause of complaint is but a trifle, and while the maxim, de minimis, etc., does not apply in cases at law, it does apply to cases in equity: Bispham, Eq., 4th ed., 58; Story Eq. Pl., 8th ed., §§ 500–3; Moore v. Lyttle, 4 Johns. Ch. 183; Chapman v. Publishing Co., 128 Mass. 478; Cummings v. Barrett, 10 Cush. 186; Smith v. Williams, 116 Mass. 510; Brace v. Taylor, 2 Atk. 253; Cooper, Eq. Pl., 166; Cowan v. Jones, 27 Ala. 317.

4. The plaintiff has a full, complete and adequate remedy at law: Mulvany v. Kennedy, 26 Pa. 44; Clark's App., 62 Pa. 447; Grey v. Railroad Co., 1 Gr. 412; Richard's App., 57 Pa. 105; Hilliard, Inj., 271; Adams, Eq., 485; Fonb., Eq., 51; 2 Story Eq. J., § 925; Harkinson's App., 78 Pa. 196; Mayer's App., 73 Pa. 164. There should be some irreparable injury, either committed or threatened, to justify an injunction: Mayer's App., 73 Pa. 164; Heilman v. Canal Co., 37 Pa. 100; Green v. Perkins, 3 Jones Eq., 177; West v. Walker, 3 Green Ch., 279; Cornelius v. Post, 1 Stockt. 196; Rhodes v. Dunbar, 57 Pa. 274; Wergel v. Walsh, 45 Mo. 560; Van Winkle v. Curtis, 2 Green Ch., 422; Jerome v. Ross, 7 Johns. Ch. 313.

5. A chancellor will not interfere to restrain an alleged trespass unless the complainant has been in undisturbed possession or has established his title by a suit at law: Hart v. Mayor of Albany, 3 Paige 213; Falls v. Tibbits, 31 Conn. 165; Clark's App., 62 Pa. 447; Sparhawk v. Pass. Ry. Co., 54 Pa. 401; Kennedy v. Burgin, 1 Phila. 441; McDonald v. Bromley, 6 Phila. 302; Rhea v. Forsyth, 37 Pa. 507; Washburn's App., 105 Pa. 480. The very question in this case was decided in Kelly v. Long, 7 Phila. 455.

OPINION, MR. JUSTICE CLARK:

It is conceded that Thomas McElhone, the plaintiff, is the owner of the fee of the locus in quo ; that the boundaries of his deed embrace the soil of the alley in dispute, and that James McManes, the defendant, against the protest of the plaintiff, placed his sewer-pipe in the alley five or six feet below the surface of the ground, in order to connect his six new houses on Thirty-sixth street with the public sewer on Haverford. It is clearly established, also, that the alley was laid out some thirty years ago by William Peterson, who was at the time the owner of the entire block of lots on Thirty-sixth street between Haverford and Rockland for the use of all the lots on that block ; and although there is no reference to it in the title papers, it is admitted that the right of way, for some purpose, exists, and that the plaintiff bought with full knowledge of the fact. The dedication was by parol, but the continuous and notorious user of the premises in accordance therewith for thirty years, or more, establishes the common right. There is therefore no doubtful question of title to the right of way which must first be settled at law in order that equity may adequately protect the possessor in the enjoyment.

But there is nothing to indicate any particular purpose for which the alley was originally designed, or that Peterson dedicated it to the common public use, under any limitations, restrictions or conditions whatsoever. We must assume, therefore, that the alley was designed for the use of the lots in common, for such purposes as an alley may ordinarily be applied. Nor is any inference of the existence of any restriction to be drawn from the manner in which the alley was used, for the use of it has been in accordance with the general purpose stated. At first, ashes were thrown upon it to keep it dry, and people passed and repassed along it at their pleasure. Ditches were dug upon it from time to time, for drainage of the waste and surface water accumulated on the lots. It seems to have been used as any other alley similarly situated. Finally it was paved with brick and continued in this condition until the defendant put in his sewer. If it was not restricted in its dedication, and has been used for the general purpose of an alley, the mere fact that it has as yet been used only for a passage way, and for drainage of the surface water, would not of

necessity restrict it to these purposes in the future. The use to which it may be applied would depend upon the growth of the city, the improvement of the adjacent property, and the municipal regulations affecting the public health. Upon what evidence can it be said that the property holders adjacent to this alley were simply entitled to a passage way and to the drainage of the surface water? If it might be used.for the drainage of the surface water, why not for the drainage of any other accumulations which might come upon the premises in the ordinary and natural user of the property.

The occupancy of the alley for drainage purposes by putting in connections with the city sewer would seem to be a most reasonable and proper use of the alley, under the terms of the dedication, and to be in conformity also with the general purposes to which it has hitherto been applied.

We are of opinion that the decree in this case should not be disturbed.

> The decree of Common Pleas is affirmed, and the appeal dismissed at the cost of the appellant.