## THOMPSON v. EASLEY.

1. Though a lane established by two coterminous proprietors, and embracing an equal strip from the land of each, was originally intended only as a way for cattle, yet, if used for more than seven years as a general way by both proprietors and those to whom they conveyed the land, the successors of neither could close up the lane, or the part taken from his own land, as against the successors of the other.

2. In such case the ordinary has jurisdiction, under section 738 of the code, to remove the obstruction.

    May 27, 1891.

Private ways. Jurisdiction. Ordinary. Before Judge MILNER. Whitfield superior court. October term, 1890.

Reported in the decision.

W. K. MOORE, R. J. McCAMY and W. C. GLENN, for plaintiff in error.

McCUTCHEN & SHUMATE, *contra*.

LUMPKIN, Justice.

1. In 1856 or 1857, Haynes and Burns were adjoining land-owners. There being no way for their cattle to get to the range except by a circuitous route, they agreed, in 1858, to open a lane between them fourteen feet wide, each giving half of the way, and building his fence in accordance with their agreement. Haynes sold his land to Johnson in 1863, who held possession until he sold to Easley in 1884. Thompson was the successor in title of Burns. It appears from the evidence that this lane, though originally intended only for the passage of cattle, was for many years used by the owners of the land on both sides of it as a general way, and that it was so used by any one who had occasion, and was a general public convenience. This state of things continued for perhaps twenty or more years, certainly for a much longer time than seven years, and the evidence discloses that at various times work was done upon the lane so as to make it suitable for hauling wood and rails, and for traveling on horseback or otherwise. While the various persons who held under Haynes testified that they had never "claimed" any right of way over this lane, a fair construction of their testimony leads to the conclusion that they certainly understood they had this right, but simply did not *assert the same in words* because in fact there was no denial of it, the use of the land as a general way being well known to Thompson, and he having for long years acquiesced therein. Finally Thompson moved his fence out to the middle of the lane, thus retaking possession of so much thereof as came originally from his side. It was to remove the obstruction thus made by Thompson that

v 87-21

proceedings were instituted by Easley before the ordinary.

In the case of Craven *v.* Rose, 3 Rich. 72, the Supreme Court of South Carolina went so far as to hold that where proprietors of adjoining lots contribute strips of land to form a lane common for the use of both, and one, after he has acquired a right of way by prescription over the other's strip, puts an obstruction on his own strip, even that does not destroy his right of way over the other's land. In Townsend *v.* Bissell *et al.*, 4 Hun, 297, the doctrine was recognized that successors in title derive from their grantors all their rights to the use of a way established by agreement between coterminous proprietors, and it was held therein that " When the owners of adjoining lots made a way between them, each setting off an equal portion of land for that purpose, and they and their grantees continue to use it in common as a way for a period of twenty years, the inference is that such use was under a claim of right and adverse." The same case is reported in 6 N. Y. Supreme Court Reps. 565.

If the lane in controversy in the present case had never been used for any purpose except as a way for cattle, no right of prescription to it as a general way could have arisen; but as it was not confined to the use originally intended, and for more than seven years had been used by the owners of the adjoining lots, their tenants and other persons, as a general way, we are of the opinion that §731 of the code is applicable. The general use of this land, as stated, was practically a denial that it was only a way for cattle, and an assertion of a right to use it for other purposes, and, therefore, such general use grew into a prescriptive right. In answer to the argument that, under §728 of the code, providing for the opening of a private way by agreement among land-owners, no right of way could

arise in favor of vendees of the original owners, unless the fact of the opening of such private way was entered on the road book, it may be said that this section does not refer to the right of prescription, but under it such vendees may acquire a right of way irrespective of the time the way may have been used by them, and this section does not interfere with the acquirement of a right of way by prescription under §731 of the code.

2. It follows, from what has been said, that the ordinary had jurisdiction, under §738 of the code, to cause the obstructions placed in this lane by Thompson to be removed.                    *Judgment affirmed.*