# CLARENCE J. ALSTAD v. JOHN W. BOYER.[1]

April 22, 1949.

No. 34,819.

[1]Reported in 37 N. W. (2d) 372.

*McCabe, Gruber, Clure, Donovan & Crassweller,* for appellant.
*Rudolph Rautio,* for respondent.

MATSON, JUSTICE.

Appeal from a judgment enjoining defendant from interfering with plaintiff's use of a driveway and requiring defendant to remove an obstruction placed thereon.

Plaintiff and defendant own adjoining residential properties in Cloquet, Minnesota, described as lots 8 and 9, block 1, Nelson's Addition. Plaintiff, Clarence Alstad, owns and occupies lot 9, which lies south of defendant's, John Boyer, lot 8. Both lots front on H street and face east. A concrete paved driveway extends from H street toward the rear of the lots along the boundary line between the premises of the parties. This driveway is ten feet wide, a portion of which width lies upon Alstad's property and the remainder upon Boyer's property.

In 1918 the homes upon these lots were destroyed by fire. At that time, separate driveways existed upon each lot and were located adjacent to each other along the boundary line between the premises. The present house on lot 8 was built in 1919 by Peter Hubert and occupied by him and his family until his death in 1938. Tenants occupied the property thereafter until the fall of 1945, when it was purchased by defendant. The present house upon lot 9 was built by plaintiff's father in 1922, and plaintiff has occupied and used the property ever since—first as a member of his parent's family, and since their deaths in 1927 as owner. At the time plaintiff's house was built, an oral agreement was made by plaintiff's father and Hubert whereby each party agreed to furnish six feet

of land adjacent to the division line between the two properties for the purpose of a common driveway. This agreement was not carried out as originally specified, in that plaintiff's father built his house so close to the north line that only four feet were left available for the common driveway. A garage was constructed on the northwest portion of plaintiff's lot sometime between 1923 and 1926, and shortly thereafter the driveway now in controversy was built, with four feet on plaintiff's lot and six feet on defendant's lot, and used by the Alstad family to reach the garage. A hired cement worker built the driveway, with plaintiff, plaintiff's father, Hubert, and Hubert's son all giving some assistance. Plaintiff personally did not enter into an agreement for the use of the driveway, but used it under the agreement made between his father and Hubert at the time of construction.

In August 1947, defendant drove a stake into the driveway and constructed a fence along the property division line. Plaintiff brought this action for a decree ordering defendant to remove the stake and to enjoin defendant from interfering with plaintiff's use of the driveway.

The trial court found that plaintiff's father and Peter Hubert orally agreed to build a common concrete driveway ten feet wide on the boundary line between their properties, extending four feet onto lot 9 and six feet onto lot 8; that both parties should have the right to use this driveway as if it had been all on their own land; that this driveway was used by the occupants of both lots 8 and 9; and that since 1926 plaintiff has continuously used the driveway under claim of right, openly, notoriously, adversely to all the world, and exclusively, except for the similar right of use by the owners of lot 8. Upon these findings, the trial court held that plaintiff had the right to use this driveway without interference from defendant, and it enjoined defendant from interfering with plaintiff's use.

A motion for amended findings and conclusions was denied, and defendant appeals from the judgment entered.

■ Defendant contends that the trial court's findings are not sustained by the evidence. Defendant admits, however, that the

driveway was built and used under the oral agreement between plaintiff's father and Peter Hubert—defendant's predecessor in title—but insists that the agreement gave to each party merely a revocable parol license to use that portion of the driveway located on the lot of the other. Under defendant's theory, each contract party simply acquired a *permissive* use in the land of the other, and of the five essentials of adverse possession, namely, that the possession must be hostile, open, actual, continuous and exclusive, the first element, that it must be *hostile,* is missing. If plaintiff's use under the contract was *permissive* as distinguished from *hostile,* he could not acquire an easement by presumption to the portion of the driveway on .defendant's lot.

In Dozier v. Krmpotich, 227 Minn. 503, 506, 35 N. W. (2d) 696, 698, we said:

"While statutes of limitation by their terms do not apply to actions involving incorporeal hereditaments such as easements, but to those for the recovery of land, and while it is said that the right of easement is acquired by prescription and title to land by adverse possession, an adverse user of an easement for the statutory period within which an action for the recovery of land must be brought is, in analogy to title to land thus acquired by adverse possession, evidence of prescriptive right thereto. Prescriptive right rests upon the fiction of a lost grant. Subject only to such differences as are necessarily inherent in the application of the rules to such cases, the same rules of adverse user apply in cases of easements by prescription as in those of title by adverse possession. Romans v. Nadler, 217 Minn. 174, 14 N. W. (2d) 482. Where the claimant of an easement by prescription has shown open, visible, continuous, and unmolested use for the statutory period, inconsistent with the rights of the owner of the servient estate and under circumstances from which his knowledge and acquiescence may be inferred, *the use will be presumed to be under claim of right and adverse, so as to place on the owner of the servient estate the burden of rebutting the presumption by evidence that the use was permissive.* Schmidt v.

Koecher, 196 Minn. 178, 265 N. W. 347; Merrick v. Schleuder, 179 Minn. 228, 228 N. W. 755; Stapf v. Wobbrock, 171 Minn. 358, 214 N. W. 49; Annotation, 170 A. L. R. 778, *et seq."* (Italics supplied.)

■ The above-quoted rule is based on a presumption that the use is hostile. Defendant asserts, however, that under Village of Newport v. Taylor, 225 Minn. 299, 30 N. W. (2d) 588, adverse possession must be established by clear and positive proof without resort to any inference or presumption in favor of the disseizor. The rule of the Newport case is limited by its facts, and that is true of the rule as applied in certain prior decisions. In the Newport case, it was applied to exclude a presumption or inference that because a house was old in 1882 it must have stood on the same location for an appreciable time prior to that year. In Minneapolis Western Ry. Co. v. M. & St. L. Ry. Co. 58 Minn. 128, 59 N. W. 983, a case in which it was admitted that claimant's original entry was by permission, Mr. Justice Mitchell said that an easement could not be established by intendment or presumption. Our decisions show that the aid of an inference or a presumption has been wholly denied to the claimant of a title by adverse possession or to an easement *only* where the evidence was controlling or where the claimant sought by means thereof to supply a deficiency in the actuality of his possession or user for the full 15-year statutory period. Obviously, where the evidence establishes a permissive use, there is no room for a presumption of a hostile use. If the evidence falls short of establishing claimant's actual use for the full statutory period, the shortage in time may not be supplied by presumption or inference. In the instant case, we are not confronted with any shortage in time of actual use.

■ Did the oral agreement, expressly or by necessary implication, give to each party a *permissive* user so as to preclude the operation of a presumption that the user was *hostile?* We think not. If any implication is to be drawn from the agreement, it is to the contrary. Two witnesses testified that Hubert in substance said:

"We are building a driveway; we will use it together; *we are each giving six feet;* might as well be good neighbors." (Italics supplied.)

As appropriately observed by the trial court, Hubert did not say: "We are letting each other use six feet of our land." If the language conveys any meaning as to the nature of the use to be enjoyed by each, it is not that of a mere permissive use, but rather that each was granted a permanent easement of use in the strip of land contributed by the other. The language of the parties does not merely fail to preclude, but actually fortifies, a *presumption* that an easement was intended. The conduct of the parties supports this presumption. Reasonable men would not surface a driveway with a slab of concrete ten feet wide—a type of construction designed to last for many years—if only a temporary use were intended or if either party thought that the use was to be merely permissive and subject to termination at any time. See, Jacobs v. Brewster, 354 Mo. 729, 190 S. W. (2d) 894. The original owners over the years had used, and each asserted, a right of use to the entire driveway that was hostile to the servient estate of the other. Each party acquiesced in the assertion of a hostile right by his neighbor. *Acquiescence* is the inactive status of quiescence or unqualified submission to the hostile claim of another, and is not to be confused with *permission,* which denotes a grant of permission in fact or a license. See, Dozier v. Krmpotich, 227 Minn. 503, 35 N. W. (2d) 696. Here, the facts do not show a permissive use, and there is nothing to rebut the presumption of hostile user for the full statutory period. An unrebutted presumption prevails and controls the decision as a matter of law. Donea v. Massachusetts Mut. L. Ins. Co. 220 Minn. 204, 19 N. W. (2d) 377. Although a mere permissive user of a way over the land of another will not ripen into an easement, the weight of authority is that where adjoining owners jointly lay out a way between their lands, each devoting a part of his land to that purpose, the use of the way by the respective parties for the prescriptive period raises a presumption of the granting of an easement, on the theory that each party by his use thereof has contin-

uously asserted an adverse right in the portion of the way lying on the other's land.[2]

■ Defendant asserts, however, that because the original parties were friendly next-door neighbors, their initial intent should be construed to be no more than an expression of neighborly good will and that, similar to the situation of parties who sustain a parental and filial relationship to each other, the use should be presumed permissive and not adverse. In the syllabus of O'Boyle v. McHugh, 66 Minn. 390, 69 N. W. 37, we said:

"As between parties sustaining parental and filial relations, the possession of the land of the one by the other is presumed to be permissive, and not adverse."

The parent-and-child presumption applies to prescriptive easement claims. Lustmann v. Lustmann, 204 Minn. 228, 283 N. W. 387. We

[2]*Arkansas:* Scott v. Dishough (1907), 83 Ark. 369, 103 S. W. 1153; *Colorado:* see, Trueblood v. Pierce (1947), 116 Colo. 221, 179 P. (2d) 671, 171 A. L. R. 1270; *Georgia:* Thompson v. Easley (1891), 87 Ga. 320, 13 S. E. 511; *Iowa:* see, Ellsworth v. Martin (1929), 208 Iowa 169, 225 N. W. 417; see, Wait v. Brock (1906), 109 N. W. 471; see, Thompson v. Schappert (1940), 229 Iowa 360, 294 N. W. 580; Molene v. Tansey (1927), 203 Iowa 992, 213 N. W. 759; *Maryland:* Dowling v. Hennings (1863), 20 Md. 179, 83 Am. D. 545; Clark v. Henckel (1893), 26 A. 1039; *Massachusetts:* Barnes v. Haynes (1859), 79 Mass. (Gray) 188, 74 Am. D. 629; *Michigan:* Outhwaite v. Foote (1927), 240 Mich. 327, 215 N. W. 331; but see the following cases of Wilkinson v. Hutzel (1906), 142 Mich. 674, 106 N. W. 207; Worden v. Assiff (1947), 317 Mich. 436, 27 N. W. (2d) 46; Wasilewski v. Kowal (1948), 320 Mich. 473, 31 N. W. (2d) 697; *Missouri:* Jacobs v. Brewster (1945), 354 Mo. 729, 190 S. W. (2d) 894; *Nebraska:* Jensen v. Showalter (1907), 79 Neb. 544, 113 N. W. 202; *New York:* Townsend v. Bissell (1875), 4 N. Y. (Hun) 297; Nicholls v. Wentworth (1885), 100 N. Y. 455, 3 N. E. 482; *Oklahoma:* Johnson v. Whelan (1935), 171 Okl. 243, 42 P. (2d) 882, 98 A. L. R. 1096; *Pennsylvania:* see, Rhea v. Forsyth (1860), 37 Pa. 503, 78 Am. D. 441; *South Carolina:* Craven v. Rose (1871), 3 S. C. (Rich.) 72; 2 Thompson, Real Property (Perm. ed.) § 518; 4 Tiffany, Real Property (3 ed.) § 1196a, p. 568; Jones, Easements, § 277; Washburn, Easements and Servitudes (4 ed.) p. 162; 2 Temple L. Q. 391; 26 Mich. L. Rev. 453; 41 *Id.* 1130; 28 C. J. S., Easements, § 18j; 17 Am. Jur., Easements, §§ 56, 57, and 63; Annotation, 98 A. L. R. 1098.

see no basis, however, for its extension to a use by and between friendly neighbors in direct contradiction of the presumption of adverse user, which prevails where adjoining landowners establish a way between their properties. Members of a family generally allow each other unusual liberties, and thus the possession or use by one member is not in derogation of the dominant or servient estate of the other. Although friendly neighbors permit certain liberties with each other, their relationship is entirely different in character and degree.

■ Is the creation of the easement void under the statute of frauds? The establishment of an easement by prescription through a presumption that there must have been a grant thereof originally but which grant has since been lost or destroyed implies in theory that the hostile or adverse user has been under a claim of right. In the instant case, the presumption of a grant of an easement arises out of the parol agreement pursuant to which the driveway was built. It is elementary that, because of the statute of frauds, an *actual* parol grant of an easement is void. It is to be noted, however, that, although a presumption of a grant of an easement implies that the hostile user is under a claim of right, the claim of right is bottomed on a fiction and need not in fact involve a well-founded claim at all. The statute of frauds is concerned with the voiding of attempted parol conveyances or *grants in fact,* and not with a fiction of a lost grant or any claim of right thereunder. Irrespective of the statute of frauds, the fiction of a lost grant obviously involves no actual conveyance of title, but simply provides a legalistic mirage of a claim of right as a theoretical basis for a presumption of adverse user. Legalistic fictions employed to effect a remedial purpose usually have, as here, no relation to actual fact other than a confusing similarity in surname or label.[3] The title to an easement by presumption is created by operation of law and is independent of any grant, oral or otherwise. The law becomes operative solely by reason of the hostile user for the prescriptive period.

[3]See, Knox v. Knox, 222 Minn. 477, 481-482, 487-488, 25 N. W. (2d) 225, 228-229, 231-232.

In fact, as pointed out by Mr. Justice Mitchell in Carpenter v. Coles, 75 Minn. 9, 77 N. W. 424, of the five essentials necessary to the creation of title by adverse possession, the one that the possession must be *hostile* need not be under any claim of right.[4] Confusion is avoided if we bear in mind that a claim of right when thus used means nothing more than that the intention of the disseizor is to appropriate and use the land as his own to the exclusion of all others. A possession that is adverse for the required prescriptive period will ripen into title by operation of law, regardless of the good or bad faith of the disseizor or whether he claimed a legal right or avowed himself a wrongdoer. It follows that the parol conveyance of an easement, whether it be pursuant to a fiction of a lost grant, or pursuant to an actual parol agreement which is void under the statute of frauds, will, *if followed by an adverse user for the prescriptive period,* establish an easement by prescription.[5]

The judgment of the trial court is affirmed.

Affirmed.

---

[4]See, Village of Newport v. Taylor, 225 Minn. 299, 303, 30 N. W. (2d) 588, 591, footnote 2.

[5]Schmidt v. Brown, 226 Ill. 590, 80 N. E. 1071, 11 L.R.A.(N.S.) 457, 117 A. S. R. 261; McKenzie v. Elliott, 134 Ill. 156, 24 N. E. 965; Graham v. Craig, 81 Pa. 459; Outcalt v. Ludlow, 32 N. J. L. 239; Texas & P. Ry. Co. v. Scott (5 Cir.) 77 F. 726, 37 L. R. A. 94; Gyra v. Windler, 40 Colo. 366, 91 P. 36, 13 Ann. Cas. 841; Alderman v. City of New Haven, 81 Conn. 137, 70 A. 626, 18 L.R.A.(N.S.) 74; Outhwaite v. Foote, 240 Mich. 327, 215 N. W. 331, citing 9 R. C. L. 779; McElhone v. McManes, 118 Pa. 600, 12 A. 564, 4 A. S. R. 616; Lechman v. Mills, 46 Wash. 624, 91 P. 11, 13 L.R.A.(N.S.) 990, 13 Ann. Cas. 923, Annotation, 13 L.R.A.(N.S.) 991.