99     306
28 SC ²647

## Fields *versus* Stokley.

1. A wooden building, though erected within the limits of a city contrary to law, is not, *per se*, a nuisance. It may, however, become such, by the manner in which it is used, or allowed to be used.

2. The mayor of a city is, by virtue of his official position, justified in demolishing a wooden building which, by reason of its construction, position and use, is dangerous to the public safety.

3. If an action be brought against the mayor for causing such demolition, his official position does not relieve him from the responsibility of proving to the satisfaction of a jury the fact that the building demolished was a nuisance. If, however, he can do so, he is not liable for his act.

January 6th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett, and Green, JJ.

Error to the Court of Common Pleas No. 1, of *Philadelphia county :* Of January Term 1880, No. 329.

Trespass, by George F. Fields against William S. Stokley, to recover damages for the destruction of a wooden building belonging to the plaintiff which had been torn down and demolished by defendant's orders. Pleas, not guilty, and a special plea, to which a demurrer was sustained.

Defendant then filed an additional plea, all the facts set forth in which were admitted on the trial, to wit: That the defendant was, in September 1876, at the date of the alleged trespass, mayor of Philadelphia, and also a citizen, tax-payer and property owner; that the United States Centennial Exhibition was then in progress at Fairmount Park; that the plaintiff and others, in violation of an ordinance of councils, had erected on Elm avenue, bordering on the Exhibition grounds, numbers of wooden booths, sheds, shanties and buildings, composed wholly of highly combustible materials, insufficiently provided with chimneys or protected against fire, that of the plaintiff being occupied as a bar-room, and the resort of disorderly persons; that the said premises were in close proximity to the buildings of the city, state, and other buildings of the International Exposition, which were thereby imperilled. That the grand jury made a special presentment to the quarter sessions of the said wooden buildings as common nuisances, dangerous to life and property, whereupon the judge then holding said court, ordered the defendant, as mayor, to abate said nuisance by tearing down and removing said buildings, if the owners thereof, after forty-eight hours' notice, failed so to do; and the plaintiff, having failed to remove the building in question after notice, the defendant caused the same to be torn down, doing as little damage as he reasonably could, &c.

It further appeared on the trial, before Peirce, J., that the

[Fields v. Stokley.]

plaintiff had leased the lots whereon the building in question was erected; that it was so erected wathout a permit from the building inspectors, and without authority from councils, the mayor having vetoed an ordinance which had been passed permitting its erection; the plaintiff and his builder admitted that they knew they were erecting the building in violation of law.

The plaintiff requested the court to instruct the jury: "That the defendant acted wholly without authority of law in tearing down the building of the plaintiff, and he is liable for the damage resulting from his commands, and the jury should find a verdict for the plaintiff for the amount of damages which they believe, according to the evidence, he sustained." *Answer.* I do not affirm that point; on the contrary, I negative it, leaving to you the question of nuisance, or no nuisance; then if no nuisance, the plaintiff is entitled to any damage sustained; and if nuisance, if the plaintiff maintained a nuisance there, then he is not entitled to any damages."

In the general charge the judge said: "The first question which arises in this case is, was or was not this building, thus taken down by the mayor, a nuisance? Was it such a common peril to the welfare of the citizens of Philadelphia, and to all who were to assemble here and visit the great exhibition, to the property exposed to danger, as to amount to a nuisance? . . . . If you find it to be a nuisance, then I say that the defendant must justify himself under the fact that it was a nuisance, and especially acting as the head of a great municipality; acting under the order of a judge of a court; acting upon the presentment of a grand jury, all tend to show that it was not mere private thought or feeling, that he was not prompted to it by any desire to do any particular wrong to this individual. . . . You will look at the whole case carefully, and at the facts and the law as I have given it to you, and if you find the plaintiff was maintaining a nuisance there, then he is not entitled to recover at all, and your verdict should be for the defendant. If, on the contrary, there was no nuisance there, then you will give such damages as the plaintiff would be entitled to recover under the evidence and facts as they have been testified to here."

Verdict and judgment for defendant. The plaintiff took this writ of error, signing for error, (1) the refusal of the court to affirm his point, as above, and, (2) "that the entire charge was calculated to mislead the jury in this, that a wooden building erected on private freehold could be a public nuisance; and that, without conviction on indictment, or a decree of a court, an individual who was a mayor could abate it at his will."

*David W. Sellers,* for the plaintiff in error.—A wooden building on private land, even though prohibited by an ordi-

[Fields *v.* Stokley.]

nance of councils, is not, per se, a nuisance. The ordinance gave no one the summary right to tear it down, and no common law right to abate it accrued. If it were so occupied as to become a public nuisance the statute law provides a remedy by indictment; the presentment of the grand jury was a foundation for such indictment, but was no justification for its summary destruction; nor was the extra-judicial order of the judge of the Quarter Sessions to the mayor. No individual has the right to abate a purely public nuisance, i. e., one that does not damage one individual of the community more than another. In such case the fact that the defendant was mayor of the city is no justification. Every man proceeds to abate any nuisance at his peril; if he misjudges, he is answerable in damages. There may be circumstances which do not admit of the delay involved in an appeal to the law for redress, as in case of an existing conflagration; but this was not such a case. Redress by indictment, under the Crimes Act (Purd. Dig. 336, pl. 108), or by an application for a mandatory injunction to remove the building, under the Inspection of buildings Act of May 7th 1855 (Pamph. L. 464), could have been had without more delay than actually occurred after the presentment of the grand jury. Counsel cited the following authorities: St. Johns *v.* McFarlan, 33 Mich. 72; Phillips *v.* Allen, 5 Wright 482; Railroad Co. *v.* Ervin, 7 W. N. C. 75; Philadelphia *v.* Collins, 18 P. F. Smith 106; 3 Black. Comm. 5, 6; Brown *v.* Perkins, 12 Gray 89; Wood on Nuisances, passim.

*Wm. Nelson West*, city solicitor, and *C. E. Morgan, Jr.*, assistant city solicitor (*Rufus E. Shapley* with them), for the defendant in error.—Apart from the right of the defendant, as mayor or in his individual capacity, to abate what was a nuisance public and private, his action was justifiable on the ground of *paramount necessity*. Under the peculiar circumstances attending the holding of the International Exposition the danger to life and property caused by the collection of wooden buildings known as "Shanty-town," was as great as the danger ordinarily caused by an existing conflagration. In such case the right of a municipal officer or an individual to destroy property is a natural right, founded on the law of necessity. *Salus populi suprema est lex*. American Print Works *v.* Lawrence, 1 Zabriskie, 248; Ibid. 3 Zabriskie, 590; Meeker *v.* Van Rensselaer, 15 Wend. 397; Jones *v.* Williams, 11 Meeson & Welby, 176; Davies *v.* Williams, 16 Q. B. 546; Harvey *v.* Dewoody, 18 Ark. 252; Hart *v.* Mayor of Albany, 9 Wend. 571; Gunter *v.* Geary, 1 Cal. 462; Pierie *v.* Shieldsboro, 42 Miss. 493.

[Fields *v.* Stokley.]

Chief Justice Sharswood delivered the opinion of the Court, January 23d 1882.

It appears by the record before us that it was expressly agreed, after the trial had progressed some time, that all the facts set forth in the special plea, not already proved should be considered as having been proved. The plea, inter alia, avers that the houses mentioned in the declaration and for the removal of which this action was brought were composed wholly of highly inflammable and combustible materials, and were insufficiently provided with chimneys and the usual and ordinary appliances for protection against fire, and were so used constantly, night and day, by drunken and disorderly persons, that the lives, health, and property of citizens were greatly endangered and the public safety imperilled. The question whether they were a public nuisance was fairly submitted to the jury by the learned judge below, and the verdict of the jury in favor of the defendant established that fact. Had the presentment by the grand jury been followed up by an indictment, trial and conviction of the plaintiff below, the judgment thereon would have been that the nuisance should be abated, and would have been a conclusive justification of the action of the defendant. The defendant was the mayor of the city, and charged with the conservation of the peace and the protection of the property of the city. He was the representative of the city. It is true that a wooden building, though erected contrary to law, is not per se a public nuisance. But it may become such by the manner in which it is used or allowed to be used. It is true that a private person not specially aggrieved cannot abate a public nuisance, and especially where a statute provides a remedy for an offence created by it, that must be followed. It is well settled, however, that a private person, if specially aggrieved by a public nuisance, may abate it. In Rung *v.* Shoneberger, 2 Watts 23, it was held by this court that the erection of a building upon the public square of a town was a public and not a private offence, and may be abated by any one aggrieved. In that case the buildings were removed by officers of the town by virtue of the authority of the town council, and the persons in possession, and who had erected the buildings, had recovered in an action of trespass. The judgment, however, was reversed, Mr. Justice Rogers saying, " A nuisance, whether public or private, may be abated by the party aggrieved, so that it is done peaceably and without a riot. The reason (says Blackstone, 3 Com. 5) why the law allows this private and summary method of doing justice, is because injuries which obstruct or arrest such things as are of daily convenience and use, require an immediate remedy, and cannot wait for the slow progress of the ordinary forms of justice." The jury, under the charge of the learned judge, has found these buildings to be of that character.

The city of Philadelphia was the owner of large and valuable property in their neighborhood. Any hour of the day or night they were in danger of being set on fire by those who frequented them with the owner's permission. It is stated as a fact in the special plea, and of course a fact admitted by the agreement, that the public safety was imperilled. Nothing more was necessary to justify the action of the defendant. If the owner or tenant of a powder magazine should madly or wickedly insist upon smoking a cigar on the premises, can anyone doubt that a policeman or even a neighbor could justify in trespass for forcibly ejecting him and his cigar from his own premises? It is true, that a private person assuming to abate a public nuisance takes upon himself the responsibility of proving to the satisfaction of a jury, the fact of nuisance. The official position of the defendant, as mayor of Philadelphia, did not relieve him from his personal responsibility in this respect. But he has been sustained by the verdict of the jury, which is a justification of his alleged trespass. We are of opinion that this case was properly submitted to the determination of the jury, that there was nothing in the charge calculated to mislead them, and that it would have been manifest error if the learned judge had affirmed the plaintiff's point, and thereby in effect instructed the jury to find a verdict in his favor.

Judgment affirmed.