# Keystone State Telephone & Telegraph Company, Appellant, *v.* Ridley Park Borough.

*Telephone companies—Boroughs—Consent of borough—Use of streets—Forfeiture—Nuisance—Equity—Condition precedent.*

A telephone company was granted the right to erect and maintain poles and wires upon the streets of a borough. The ordinance provided that local telephone service should he had by the residents of the borough on or before March 1, 1902. In accordance with the ordinance the company gave a bond to the borough which provided that the construction should be complete on or before March 1, 1902, or that the company should forfeit to the borough the sum of $200. The lines were not completed on the date named, and one week thereafter the company was notified by the borough to remove its poles. To this notice the company replied asserting its right emphatically and defiantly to continue the occupancy of the streets. The borough did not at once recourse to force to remove the poles, but subsequently threatened to do so, and the company then filed a bill in equity to restrain the borough officials from removing the poles. *Held,* (1) that the borough was not estopped from removing the poles by its delay; (2) that the forfeiture of the sum of $200 mentioned in the bond was not the sole remedy of the borough for the company's failure to complete the construction within the time limit; (3) that the condition named in the ordinance and bond was a condition precedent, and as it was unperformed, the borough had the right to remove the poles.

*Telephone companies—Constitutional law—Amendment of statutes—Acts of May 1, 1876, P. L. 90, and June 25, 1885, P. L. 164.*

The fourth section of the Act of May 1, 1876, P. L. 90, as amended by the Act of June 25, 1885, P. L. 164, is not unconstitutional, and under its provisions construed with the Act of April 29, 1874, P. L. 73, to which it is supplementary, a telegraph and telephone company is required to apply for and obtain the permission of the borough authorities by ordinance before erecting its poles and stringing its wires in the streets. In such a case the borough may make the grant of its permission conditional upon the completion of the line within a reasonable time. A time limit of five months for completion is not unreasonable.

*Telephone companies—Boroughs—Jurisdiction of borough over street—Nuisance—Condition precedent.*

Where a telephone company fails to perform a condition precedent in a contract with a borough to complete the construction of its lines within a time specified, the borough may treat the poles and wires erected in the streets as a nuisance and remove them after notice without a breach of the peace, and without unnecessary injury to the company's other property.

Argued Nov. 21, 1904. Appeal, No. 15, Oct. T., 1904, by plaintiff, from decree of C. P. Delaware Co., Dec. T., 1902,

No. 242, dismissing the bill in case of The Keystone State Telephone and Telegraph Company v. Ridley Park Borough, George C. Hetzel et al. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Superior Court.

*Error assigned* among others was in dismissing the bill.

*A. B. Geary* and *Frank R. Shattuck*, for appellant.—The act of 1876 is unconstitutional: Bradford City v. Pa. & N. Y. Tel. & Telegraph, etc., Co., 26 Pa. C. C. Rep. 321.

The highways in the state belong to the commonwealth; the legislature has vested in it the necessary power and authority to vest rights in public corporations to make use thereof, unless that authority is taken away by constitutional provisions: O'Connor v. Pittsburg, 18 Pa. 187; The Danville, Hazleton and Wilkes-Barre Railroad Co. v. Commonwealth, 73 Pa. 29; Homestead Street Railway Company v. Pittsburg & Homestead Electric Street Railway Company, 166 Pa. 162.

The learned court overlooked entirely the provisions of the ordinance providing for payment of $200 on failure to furnish service by March 1, 1902, and also overlooked entirely section 10, which expressly provides for what cause a forfeiture will take place: Gas Co. v. DeWitt, 130 Pa. 235.

The right to declare a forfeiture must be strictly reserved: Thompson v. Christie, 138 Pa. 230; Stafford v. Walker, 12 S. & R. 190; Helme v. Phila. Life Ins. Co., 61 Pa. 107; Wills v. Manufacturers' Natural Gas Co., 130 Pa. 222; Westmoreland, etc., Natural Gas Co. v. DeWitt, 130 Pa. 235.

We respectfully submit the act of assembly providing that the permission of the borough shall be by ordinance, the same method is required to revoke that permission: Plymouth Twp. v. Chestnut Hill, etc., Ry. Co., 168 Pa. 181; Minersville Borough v. Ry. Co., 205 Pa. 394; Scranton Ry. Co. v. City of Scranton, 5 Lacka. Leg. News, 250; Archbald Borough v. Carbondale Traction Co., 3 Pa. Dist. Rep. 751; Pittsburg, etc., Ry. Co. v. Monongahela City, 12 Pa. Dist. Rep. 544; Easton, etc., Ry. Co. v. Easton, 133 Pa. 505.

The Supreme Court in the case last cited emphatically condemned conduct such as the borough threatens in this case. There the city of Easton took the same position that the appellees take here. The city officials threatened to tear up the tracks of a street railway company. In this case the borough officials threaten to destroy the property of a telephone company and thereby deprive many residents of their own borough and of other sections of the country, of telephone service.

When an agreement provides for forfeiture upon failure to comply with certain covenants, provision is not self-operating, but the party claiming the forfeiture must act and exercise his right promptly: Thompson v. Christie, 138 Pa., 230; Wills v. Manufacturers' Natural Gas Co., 130 Pa. 222 ; Westmoreland, etc., Natural Gas Co. v. DeWitt, 130 Pa. 235 ; Mutchler v. Easton, 148 Pa. 441 ; Drake v. Lacoe, 157 Pa. 17 ; Lehigh Coal, etc., Co. v. Early, 162 Pa. 338; Lynch v. Versailles Fuel Gas Co., 165 Pa. 518.

*Frank R. Savidge* with him *O. B. Dickinson*, for appellees.— The act of 1876 has been followed for over a quarter of·a century. Large and numerous companies have been incorporated under it. In fact, the constitutionality of this act and its amendment of June 25, 1885, has been practically recognized by the Supreme Court in People's Telephone & Telegraph Co. v. Berks and Dauphin Turnpike Road, 199 Pa. 411, and the act of 1876 has been construed in York Telephone Co. v. Keesey, 5 Pa. Dist. Rep. 366; Commonwealth v. Penna. Telephone Co., 18 Phila. 588.

It is submitted that the same principles of law under which municipalities may impose upon street railway companies conditions to use of the streets and highways, apply to telephone and telegraph companies : New Castle v. Central District & Printing Telegraph Co., 207 Pa. 371; Pittsburg's App., 115 Pa. 4; Allegheny City v. Ry. Co., 159 Pa. 411; Lewistown Borough v. Tel. Co., 10 Pa. Dist. Rep. 562.

The appellant company not having completed the construction of its telephone line on or before March 1, 1902, and not having furnished local telephone service to the borough residents on or before the same date, the injury to the borough by the failure of these two distinct conditions was twofold, and

there is perfect and intentional consistency in the separate penalties imposed.

The erection and maintenance of the telephone line after March 1, 1902, without authority from the borough was, per se, a nuisance: Attorney General v. Lombard & South St. Pass. Ry. Co., 1 W. N. C. 489; Lancaster Turnpike Co. v. Rogers, 2 Pa. 114; Stewart's App., 56 Pa. 413; Hartman v. Pittsburg Incline Plane Co., 11 Pa. Superior Ct. 438; Plymouth Twp. v. Ry. Co., 168 Pa. 181.

OPINION BY RICE, P. J., October 9, 1905:

This is an appeal from a decree dismissing the plaintiff's bill praying to have the borough and its officers restrained from cutting down, destroying or in any manner interfering with the plaintiff's poles, wires or telephone system. The plaintiff was incorporated under the laws of the state of New Jersey and has complied with the laws of Pennsylvania relative to the registration of foreign corporations.

By ordinance approved September 30, 1901, the borough granted consent to the plaintiff to erect and maintain poles and wires within the limits of the borough, upon terms and conditions thereinafter set forth, which were thereby "declared to be conditions precedent to the vesting of said consent." Amongst these was the express condition, "that local telephone service may be had by the residents of the borough on or before March 1, 1902." Section 8 of the ordinance provided that the plaintiff should within thirty days furnish to the borough a bond in the sum of $1,000 conditioned, inter alia, "for the faithful performance of the provisions and requirements of this ordinance, and upon failure of the said Keystone State Telephone and Telegraph Company to complete the construction of the said telephone line as provided on or before March 1, 1902, then the said Keystone State Telephone and Telegraph Company shall forfeit and pay to the said Borough of Ridley Park the sum of two hundred ($200) dollars, which amount shall be secured by the bond aforesaid." Section 9 provided that the ordinance should take effect upon the execution by the plaintiff of an agreement accepting the terms and provisions of the ordinance, and upon payment into the borough treasury of the sum of $20.00 to cover the expense

of enacting and publishing it.   Section 10 provided as follows:
" In case the said company shall fail to execute the said agree-
ment and to file said bond duly approved by the solicitor or
to make payment within thirty (30) days after the approval
of this ordinance by the chief burgess, the said ordinance shall
become null and void, and all rights and privileges granted to
the said company, or now possessed by it within the said
Borough of Ridley Park, shall cease and determine."   The
plaintiff accepted the terms of the ordinance, gave the bond and
paid the $20.00 and in the last two or three days of February,
1902, began the erection of the poles, which it completed
within two weeks afterwards.   The wires were not strung
until three or four months later.   What we shall say relative
to the right of the company is to be taken in connection with
the fact that it did not complete, nor substantially complete,
the construction of the telephone line prior to March 1, 1902,
nor carry the construction far enough to render any telephone
service whatever to the residents of the borough until about
August, 1902.   In February, 1903, the borough council passed
certain resolutions authorizing the burgess to remove the poles
from the highways, whereupon this bill was filed.

It cannot be said that the borough waived strict perform-
ance of any condition precedent, or estopped itself to assert
the breach thereof.   There is no evidence upon which such a
finding could be based.   The borough did nothing and omitted
nothing which delayed the commencement of the work. Shortly
before March 1, 1902, the company applied to the council
for an extension of time, which was not granted.   On March
7, 1902, it was notified by the burgess, by telegram and by let-
ter, that its rights under the ordinance expired March 1, and
was warned to erect no more poles and to remove those erected.
To this notice the company replied by letter dated March 11,
1902, from which we quote: " It is unnecessary, at this time,
to present the good and sufficient reasons which exist, as to
why our line is not as yet entirely completed, but the construc-
tion has been under authority of the permission granted by
your borough council.   We have made payment for permit to
erect our poles, which has been done, and it is not within
your power as chief burgess, nor is it within the power of
your borough council to revoke this permission.   If you will

send us a statement specifying any items of damage which your borough has sustained by reason of this line not being entirely completed, we will be pleased to give the matter our attention. We desire it, however, to be expressly understood that whatever is necessary to be done in order to complete our line, we intend to have done and performed. Any attempt on your part, as chief burgess, or on the part of policemen, or other agents, who you may employ for the purpose of preventing this work being done, will be in violation of our rights in the matter and without legal authority on your part, notice of which you will consider served upon you by the receipt of this letter." In view of the refusal of council to extend the time of the notice above referred to, and of this somewhat emphatic, if not defiant, statement of the company's position, the borough's failure to resort to force or other measure to prevent the company's workmen from proceeding cannot be construed as an acquiescence on its part in what was done afterwards. See Commonwealth v. Ruddle hereafter referred to. The company evidently stood on its legal rights under the ordinance and the borough did the same. Each knew the other's position, and neither was misled. There was neither waiver nor ground of estoppel: Minersville Boro. v. Schuylkill Electric Railway Co., 205 Pa. 394.

It is argued that as the eighth section of the ordinance provided that the company should forfeit and pay $200 upon its failure " to complete the construction of the said telephone line as provided on or before March 1, 1902 " and the tenth section provided that upon its failure to give bond and pay the $20.00 within thirty days the ordinance should become null and void and all rights and privileges granted to the company should cease and determine, therefore, the sole remedy of the borough for the company's failure to complete the construction within the time limit was by suit on the bond to recover the $200. The logical conclusion to which this argument tends is, that immediately upon the acceptance of the terms and provisions of the ordinance, the giving of the bond and the payment of the $20.00, the company's right to construct and maintain a telephone line on the borough streets became vested and indefeasible. This construction of the ordinance would give the company an indefinite time within which to commence as well

as to complete the work. Whether its delay was long or short the legal consequence of its breach of the condition would be the same. Even though the company had not commenced the work within the time limit, and upon its expiration the borough had in the most solemn manner undertaken to revoke the consent, this would have been unavailing; the company could have defied the borough to do more than to sue for the $200, if the construction of the ordinance now contended for be correct. We think it is not correct. It was perfectly consistent to provide in one part of the ordinance that the prosecution of the work far enough to furnish local telephone service to the residents of the borough on or before March 1, 1902, should be a condition precedent to the vesting of consent to maintain a telephone line on the streets of the borough, and to provide in another part of the ordinance that the company's failure to complete the work in accordance with all the terms of the ordinance on or before the same date should make the company liable to forfeit and pay $200. These two provisions do not necessarily relate to the same thing, and even if they do, still there is no inconsistency between them. Both can stand as they are written, and must be permitted to in order to carry out the full intent of the ordinance.

It is suggested further that the right of forfeiture must be strictly reserved. But as was said in a similar case the "question here is not of forfeiture but of consent:" Plymouth Township v. Chestnut Hill, etc., Railway Co., 168 Pa. 181. The consent contemplated was not merely to erect but to maintain. The condition was in fact and in law, as it was declared to be by the parties, a condition precedent. They left no room for construction, and it has been declared, "No amount of hardship, or impossibility, or illegality, will avoid the bar of a condition precedent unperformed: Co. Litt. 206; 2 Blackst. 157 :" Allegheny City v. Millville, etc., Street Railway Company, 159 Pa. 411. Therefore, in strict law, no action on the part of the borough was needed to terminate the privilege granted, if the condition was not substantially fulfilled. Consent to maintain a telephone line in the borough never became completely vested in the plaintiff, because the condition precedent was not performed. The line is there now without the borough's consent, and the main part of it was put there after

the time limit had expired, in defiance of ample warning that the consent which had become inoperative on March 1, 1902, would not be renewed, at least not upon the same terms. The action of the borough council upon the plaintiff's application to extend the time limit, the notice given by the burgess, and the resolutions passed by council were all the action that was necessary to enable the borough to proceed in a lawful manner to remove, or compel the removal of, the poles and wires from the streets, provided they are unlawfully there.

But it is claimed that a telephone company incorporated under the laws of this commonwealth, or a telephone company incorporated under the laws of another state, which has complied with the laws of Pennsylvania relating to registration of foreign corporations, does not require the consent of the municipal authorities before occupying the streets of a borough or city, but such right is conferred by statute, subject only to reasonable police regulations on the part of the municipality. This proposition implies that the fourth section of the Act of May 1, 1876, P. L. 90, as amended by the Act of June 25, 1885, P. L. 164, is unconstitutional and void. The argument is, that the section, as originally enacted, was in conflict with section 7, article 3 of the constitution, because by the proviso cities of the first class were exempted from its provisions; that being for that reason unconstitutional and void, it is to be treated as if it had no existence, as if it never had been passed; therefore there was nothing upon which an amendment could operate. An unconstitutional statute is not a law, but it is not strictly accurate to say that it is always and under all circumstances to be treated as if it never had been passed. In a well considered New Jersey case the court said: "For many purposes an unconstitutional statute may influence judicial judgment, where, for example, under color of it private or public action has been taken:" Allison v. Corker, 67 N. J. L. 596, (52 Atl. Repr. 362). An illustration of its effect in such a case will be found in King v. Philadelphia Company, 154 Pa. 160. So in Philadelphia v. Barber, 160 Pa. 123, it was held, that although to the extent that the provisions of the Act of May 14, 1874, P. L. 158, attempted to make property taxable which was not previously so, it transgressed the rule of the constitution as to the titles to legislative acts, and therefore was inoperative, yet

it was proper to look at it in determining the intention of the legislature in using the language contained in the residue of the act.   See also Commonwealth v. Potts, 79 Pa. 164; General Assembly v. Gratz, 139 Pa. 497.   The appellate courts of some of the other states have held that an amended section of a statute takes the place of the original section, that the whole statute after the amendment has the same effect as if re-enacted with the amendment, and hence an unconstitutional statute may be amended into a constitutional one, so far as its future operation is concerned, by removing its objectionable provisions, or supplying others to conform it to the requirements of the constitution : State v. Cincinnati, 52 Ohio, 419 (40 N. E. Repr. 508) ; Ferry v. Campbell, 110 Iowa, 290 (81 N. W. Repr. 604) ; Allison v. Corker, 67 N. J. L. 596, (52 Atl. Repr. 362).   This view is not universally accepted, however, as will be seen by the opinion of our Brother MORRISON, when on the common pleas bench, in Bradford City v. Pa. & N. Y. Telegraph & Telephone Co., 26 Pa. C. C. Reps. 321.   But it is unnecessary to decide that precise question in the present case, or to declare what effect the amendatory act of 1885 has upon the first three sections of the act of 1876.   The question before us is as to the validity and construction of the fourth section after its amendment.   It is to be observed, that it does not consist simply of a provision striking out that portion of the section amended which excluded cities of the first class, but is a literal re-enactment of the section with the objectional clause omitted. In a similar manner the first section of the Act of June 11, 1879, P. L. 150 was amended by the Act of May 17, 1883, P. L. 36, and this was held to cure the constitutional defect, if there was one, in the original act: In Re Pottstown Boro., 117 Pa. 538.   The fourth section of the act of 1876 as amended, being a supplement to the act of 1874, the two acts are to be read together as parts of one complete system : Keeling v. Griffin, 56 Pa. 305 ; Keeling's Road, 59 Pa. 358.   The application of this principle of construction is not prevented by section 6 article 3 of the constitution.   " The constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply :" Searight's Estate, Stuart's Appeal, 163 Pa. 210 ; Emsworth

Boro., 5 Pa. Superior Ct. 29. Without further elaboration we conclude, that the fourth section of the act of 1876, as amended by the act of 1885, is not unconstitutional, and that under its provisions construed with the act of 1874, to which it is supplementary, the plaintiff was required to apply for and obtain the permission of the borough authorities, by ordinance, before erecting its poles and stringing its wires in the streets. And, as the act expressly provides that the ordinance "may impose such conditions and regulations as the municipal authorities may deem necessary," we are further of opinion, that the municipality may make the grant of its permission conditional upon the completion of the line within a reasonable time, and that the time limit prescribed by the condition of the ordinance under consideration was not unreasonable. The condition having been expressly accepted by the plaintiff was a contract between the parties by which the right to occupy the streets was regulated, and was binding on the plaintiff: Minersville Boro. v. Schuylkill Electric Railway Co., 205 Pa. 394 and cases there cited.

If, however, nothing more were involved in the case than a mere breach of contract, it might well be said that the borough could not proceed in a summary way to redress the injury complained of: Troy Water Co. v. Troy Boro., 200 Pa. 453; Tyrone Gas & Water Co. v. Burley, 19 Pa. Superior Ct. 348. But the power which the borough claims the right to exercise is not derived from its contract with the plaintiff, but exists in spite of it, because the condition precedent to the right of the company to occupy the streets was not performed. The power of a borough to prohibit and remove unlawful obstructions placed in its streets is implied in the statutory grant of all "needful jurisdiction" over the streets and is one of the powers expressly enumerated in the general borough law. It is claimed, however, with great earnestness and plausibility that even if the borough has authority to compel the plaintiff to remove its poles, "the borough officials cannot arbitrarily remove them nor can they have relief in this suit. They must proceed by suit in equity to have the poles removed." Before reviewing the authorities bearing upon the question of the right of municipalities or the party aggrieved to abate public nuisances by their own

act it will be well to consider at some length the case of Easton, etc., Railway Co. v. Easton, 133 Pa. 505, which, it is claimed by the appellant's counsel, rules the case before us. In that case a street railway company, chartered by a special act, which was silent as to the style of rail to be used, after adopting the flange rail, then the only one used for such tracks, and continuing the use of the same for twenty years, relaid a portion of its track with a **T** rail. At the time of this change there was no ordinance prohibiting the use of this kind of rail. Subsequently the company relaid another portion of the same track, which had been torn up by the city contractor in lowering and widening an approach to a county bridge, with **T** rails, without complying with the provisions of an ordinance, that had been passed in the meantime, requiring passenger railway companies to submit to the highway department for its approval and sanction all plans, courses, style of rails, and the manner of laying the same, either as to repairs, extension or construction, before proceeding to make such repairs, etc. The city officials then took up the rails laid on this portion of the track and a short distance beyond, whereupon the company filed a bill to restrain the city and its officers from obstructing, taking up or otherwise interfering with the company's track. Upon appeal from the decree dismissing the bill it was held, that there was neither reason nor law to sustain the proposition that the company was bound by its charter to the same kind of rail in use when the charter was granted; that the track as relaid with the **T** rail was not such a nuisance per se as the city could summarily abate; that, as the city had not applied by cross bill or otherwise, for a legal adjudication of the differences between the company and itself, the injunction should be granted without determining the merits of the controversy. Chief Justice PAXSON said: " We have very decided views in regard to the course pursued by the city officials. There was a dispute between them and the appellant company as to the kind of rail to be used. It was a dispute not unlikely to arise, under such circumstances. It presented a fair subject for contention, and the law provides adequate and orderly ways of settling such differences. The question here is, not what were the merits of this controversy,—upon that subject we are not now called

upon to express an opinion,—but were the city officials justified in deciding this question, both as to its law and its facts, and then carrying their decree into effect by an act of brute force?" He held that it was not a case where the city could take the law into its own hands. It is to be noted that the right of the company to maintain a railway on the street was not in dispute; the dispute was as to its right to substitute a **T** rail for a flange rail. The case does not deal with the question of the right of a municipality to abate an unlawful encroachment upon a highway under its control. Indeed, Chief Justice PAXSON was careful to distinguish such a case from the one before the court, for he said : "Nor is there any analogy between this case and that of the obstruction of a public highway by an unauthorized person." The same distinction was recognized by him in New Castle v. Raney, 130 Pa. 546, at page 564. After a very careful study of the decision we are unable to concur with the appellant's counsel in the conclusion that it rules the present case. It was decided upon its special facts, and it seems quite clear to us that if it had been the intention of the court to lay down a general rule relative to the abatement of a nuisance consisting of the unlawful occupation of a highway by an unauthorized person, the Chief Justice would have discussed the earlier cases upon the subject.

"The remedies at law for nuisances are very ample. Those that are public may be removed by indictment, and such as are private may be redressed by an action on the case. And the party aggrieved by either a public or private nuisance, may also abate or remove it by his own act, so as he commit no breach of the peace in doing so, nor occasion, in the case of a private nuisance, any unnecessary damages :" Rhea v. Forsyth, 37 Pa. 503.

A leading Pennsylvania case upon the subject is Rung v. Shoneberger, 2 Watts, 23. That was an action of trespass against borough officials and others for removing buildings of the plaintiff, by authority of a resolution of the town council, which were alleged to be on a public square. The concluding sentence of the opinion shows the point decided. "It is admitted, that they (the buildings) were removed peaceably by the defendants, as officers of the borough, duly appointed and empowered under a resolution of the corporation, and if the

jury believe they were on public ground, the plaintiff is not entitled to recover." In the course of his discussion of the general principles involved, RODGERS, J., said: " But a nuisance, whether public or private, may be abated by the party aggrieved, so that it is done peaceably, and without a riot. The reason (says Blackstone, 3 Bl. Comm. 5) why the law allows this private and summary method of doing justice is, because injuries which obstruct or arrest such things as are of daily convenience and use, require an immediate remedy, and cannot wait for the slow progress of the ordinary forms of justice." This statement of the law was quoted with approval by Chief Justice SHARSWOOD in the case of Fields v. Stokley, 99 Pa. 306, which was an action of trespass brought against the mayor for causing the demolition of a wooden building on private land.

In Lancaster Turnpike Co. v. Rogers, 2 Pa. 114, it was held where a turnpike company had erected a tollhouse partly on land of another under a license in consideration of user of road by such owner, and had abandoned the house as a toll house and removed the gate, that it became a nuisance both on the road and on the land and could be removed by the party aggrieved.

In Dyer v. Depui, 5 Wharton, 584, it was held that if a person entitled to raise water to a certain height by means of a dam, raise it higher that he is entitled to do, the person injured may reduce the dam to the proper height, but has not the right to demolish it. The same principal was recognized in Brake v. Crider, 107 Pa. 210, which was an action of trespass for removing fences across an alleged highway. Justice STERRETT said: " If plaintiff maintained a nuisance by building and keeping up a fence across either of the other tracks over which the public had a right of way, that might have justified the abatement of the nuisance by taking down the fence at that point, but it could not justify the commission of a trespass on another part of his premises where no right of way existed. In other words, the maintenance of a nuisance may justify its abatement, but it can never justify the commission of an independent trespass."

In Harvey v. Lackawanna and Bloomsburg Railroad Co. 47 Pa. 428, it was held that the laying of tramways by the owner of coal lands across a public road running through his land for

use of his coal cars is illegal and a nuisance, and a railroad company occupying the highway longitudinally with its railway is not liable for damages for removing them. Justice READ said: "Any act by which a public highway is in a perceptible manner obstructed is a nuisance." See also Commonwealth v. McNaugher, 131 Pa. 55. After referring to Reg. v. Train et al 8 Jurist (N. S.), 1151 he said: "In the next case of Reg. v. United Kingdom Electric Telegraph Company, 8 Jurist (N. S.), 1153, the same court held that the post of a telegraph company erected on a highway and placed there without lawful authority, is an unlawful act and amounts to a nuisance at common law."

In Commonwealth v. Ruddle, 142 Pa. 144, it was held that where township supervisors, without legal proceedings and an order of court to justify it, made a fill upon a towpath, where a public road crossed it, interfering with the convenient and lawful use thereof by a canal company the employees of the company were not indictable for peaceably removing the obstruction. The present Chief Justice said: "In so doing they were clearly within their legal rights. They would have been justified in preventing the filling in, but they adopted the more prudent course of peaceably removing it instead. Their action bears no possible analogy to the conduct reprobated in Easton, etc., Ry. Co. v. Easton, 133 Pa. 505, or Cooke v. Boynton, 135 Pa. 102. The unlawful and violent act here was that of the supervisor in changing the previously established grade."

In Klingler v. Bickel, 117 Pa. 326, it was held that a borough council by its officers and agents may demolish a wooden building in the course of construction contrary to an ordinance, after notice that the ordinance will be enforced, without liability on the part of the officers or agents effecting the removal to an action of trespass. "Every frame building," said PAXSON, J., "erected in a closely built up portion of a town, in violation of a lawful ordinance prohibiting it, may be said to be a nuisance, owing to the danger from fire; but it is not such a nuisance per se as would justify a private person in abating it. But when it comes to a question of the power of council to abate it and enforce its ordinance, we have an entirely different question before us." We call particular attention to the last sentence because it represents the situation here.

In Kopf v. Utter, 101 Pa. 27, which was an action of trespass against borough officials for entering on plaintiff's land and moving his fence back in accordance with what the borough claimed was the true line, a verdict and judgment for the defendants were sustained. Amongst the cases where the courts have refused to restrain municipalities from abating nuisances in the streets under their control may be mentioned City of Wilkes-Barre's Appeal, 100 Pa. 313; Aronheimer v. Stokley, 2 W. N. C. 723; 11 Phila. 283; Yost v. So. Bethlehem Boro., 4 Lanc. L. R. 62.

We have not deemed it necessary to cite cases from courts of other jurisdictions. It seems quite clear to us from an examination of the decisions of the courts of our own state that under the facts of this case the right of the borough to remove plaintiff's poles from the borough streets, after due notice to the plaintiff to remove them, cannot be denied, provided the removal is effected without a breach of the peace and without unnecessary injury to the plaintiff's other property.

Decree affirmed and appeal dismissed at costs of appellant.

MORRISON, J., dissents.