## Tshudy v. McCutcheon et al.

*Daniel B. Strickler,* for plaintiff.

*George T. Hambright* and *John E. Malone,* for defendants.

SCHAEFFER, J., January 19, 1935.—The plaintiff sued defendants jointly in trespass to recover damages for the destruction by defendants of a hive of bees alleged to be the property of the plaintiff. At the trial of the case the court entered a compulsory nonsuit. Plaintiff moved to strike off the nonsuit.

According to the evidence plaintiff resides at 408 West Frederick Street, Lancaster City. Defendants reside on Lancaster Avenue, Lancaster City. The rear yards of both premises adjoin each other. The plaintiff kept four hives of bees on or about May 17, 1933, on the roof of a little shop building in the rear of his yard. He obtained the first swarm of bees from his son who got them from a tree on the College Campus in Lancaster City. From the original hive plaintiff got swarms each year and hived them. On or about May 17, 1933, one of the hives of bees left plaintiff's premises and swarmed on a peach tree butt in the defendant's adjoining yard. Plaintiff prepared to hive the bees at the peach tree butt, but defendants refused to allow plaintiff to come on their premises. Plaintiff then went to another neighbor's yard, reached over the fence with a pole and tin can and tried to reclaim the bees. It is testified that he was prevented from doing so by defendants setting fire to newspapers and singeing off the wings of the bees. The queen bee was burned and one hive of bees disappeared. The plaintiff kept the bees for the purpose of receiving honey for his own use. He did not sell or give away either bees or honey. Plaintiff's wife testified that she saw them go from plaintiff's box or hive and swarm on the peach tree stump on defendant's premises.

In the early case of Wallis v. Mease, 3 Binney 546, the Supreme Court of Pennsylvania recognized bees as ferae naturae, but that they may be reclaimed from their wild nature and be domesticated.

In the recent case of Allman et ux. v. Rexer, 21 D. & C. 431, decided by Judge McDevitt, of Philadelphia, on July 11, 1934, the legal status of bees and how they may

become a nuisance are fully and clearly set forth. In that case plaintiffs sought to restrain defendants from maintaining bee hives in Philadelphia on the ground that the bees interfered with their physical comfort and financial investment in greenhouses. Judge McDevitt said in his opinion (p. 432):

"The animal kingdom to which bees belong is subject to a certain qualified proprietary interest. That is, they belong to no one, not even the owner of the soil on which their nest may be, unless they have been subjected to his dominion, and when so reduced to possession they become his property. This principle, however, is subject to an important modification—they remain the property of the possessor only so long as his dominion continues, and if such animals regain their freedom, as bees by swarming out and occupying some natural hive, as a hollow in a tree, the property right is lost and they again revert to their natural state and become the property of the first taker."

Following Blackstone, Bracton and Justinian he says: " 'A swarm which fly from out of my hive, are mine so long as I can keep them in sight, and have power to pursue them; and in these circumstances no one else is entitled to take them.' " This is the generally accepted principle of law. Judge McDevitt also decided that their natural propensities are not of a vicious nature and that the keeping of bees is not a nuisance per se. Whether bees are a nuisance is a question of fact. It is necessary to show that the particular bees were generally vicious and that notice thereof had been given to the owner of the bees and that the owner had neglected to correct it or remove the bees. In Town of Arkadelphia v. Clark, 52 Ark. 23, it was decided: "Neither the keeping, owning, or raising of bees is, in itself, a nuisance. Bees may become a nuisance in a city, but whether they are so or not is a question to be judicially determined in each case."

The defendants at the trial relied largely upon sec-

tions 9 and 12 of the Act of April 6, 1921, P. L. 95. Section 9 provides:

"On and after July first, one thousand nine hundred and twenty-three, it shall be unlawful for any person to keep or maintain honey-bees in any hive other than a modern movable frame hive which permits thorough examination of every comb to determine the presence of bee disease. All other types of hives or receptacles for bees which are in use after the said date are hereby declared to be a public nuisance and a menace to the community, and the Secretary of Agriculture, the chief apiary adviser or any deputy apiary advisers may seize and destroy the same without remuneration to the owner."

Section 12 provides for the inspection and certification of an apiary on or before the first day of April of each year by the chief apiary adviser of the State Department of Agriculture. This is limited, however, to those engaged in rearing queen bees and bees for sale. There is no evidence in the instant case of the plaintiff coming within the purview of section 12 of this act. However, section 9 of the act merits more serious consideration. Apparently the plaintiff knew nothing of this legal requirement in this State and he testified with reference to the construction of his bee hives as follows: "It was put in shape for the bees to go to work and the supers were built and put on the top." The court felt at the trial that the burden rested upon the plaintiff to show that he constructed his bee hives in conformity with the requirements of the act of assembly referred to: otherwise, it would constitute a public nuisance as provided in the act. The plaintiff contended that this is a matter of defense.

In Greenfield v. Philadelphia, 282 Pa. 344, the court held:

"A plaintiff in litigation who offers himself as a witness does so generally as to all relevant matters. Whether or not he has testified in chief to facts or circumstances which the opposite party desires to bring out, he may be cross-examined as to them, provided they are relevant,

are not strictly speaking matters of defense, and are not of such a nature that, in the judgment of the trial court, it would be confusing to the jury to introduce them at that particular time, and for that reason should be postponed until defendant is putting in his testimony. In such matters much must be left to the sound discretion of the trial judge."

The act itself provides that the State Department of Agriculture may destroy the bee hives, but not the bees, where the hives are not constructed according to law. A party aggrieved by either a public or private nuisance may abate or remove it by his own act provided he commit no breach of peace in doing it, nor occasion, in the case of a private nuisance, any unnecessary damage: Rhea v. Forsyth, 37 Pa. 503. A private person assuming to abate a public nuisance takes upon himself the responsibility of proving to the satisfaction of a jury, the fact of nuisance: Fields v. Stokley, 99 Pa. 306. In an action of trespass for killing a dog the defendant may justify by showing that the dog was of known vicious habits and when killed was engaged in depredation on defendant's property: King v. Kline, 6 Pa. 318.

The court concludes under the evidence that the plaintiff had a qualified property in the bees in question. Even if plaintiff violated said Act of 1921, the question whether defendants could lawfully destroy the bees on defendants' own premises requires consideration. Plaintiff could not trespass on defendants' premises without the latters' consent to repossess himself of his bees. A legal remedy was available for such purpose. However, it is necessary for the defendants to show that said bees were such a nuisance as would justify the abatement thereof by defendants.

And now, January 19, 1935, the motion to strike off the nonsuit is sustained and the court hereby strikes off the compulsory nonsuit entered in this case.